

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:MG
F. #2022R00403

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 24, 2024

By ECF

Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Dewayne Tripp
                  Criminal Docket No. 22-336 (MKB)

Dear Chief Judge Brodie:

      The government respectfully submits this sentencing memorandum in advance of the defendant Dewayne Tripp's sentencing which is scheduled for May 2, 2024 at 10:30 a.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 63 to 78 months' imprisonment.

I.    Background

    A.    Offense Conduct

      The defendant's conduct is described in the Probation Department's Presentence Investigation Report, dated September 28, 2023 ("PSR"). In short, the defendant—a convicted felon and recidivist with several convictions—committed an armed robbery on March 24, 2022. PSR ¶ 1.

      On March 24, 2022, the defendant entered a convenience store in Brooklyn, New York, stole a packaged food item, and began eating it without paying. Id. ¶ 5. As the defendant left to exit the store, one of the store employees attempted to stop him from leaving. The defendant instantly became aggressive, walking back to the store counter and yelling, "Don't fuck with me. Do you know who I am?" Customers in the store at the time tried to calm down the defendant.

      The defendant, who had been carrying a small black plastic bag, then pulled a gun out of his bag and racked it. He then placed the gun in his sweatshirt. The defendant continued to yell at the employee, repeating his earlier warning, "Don't fuck with me," and he left the store.

The altercation was captured on video surveillance as shown in the screenshots below, with the gun encircled in yellow:






Law enforcement responded to a 911 call from the convenience store and were able to locate and arrest the defendant that day. The defendant still had the gun, a Ruger LCP .380 caliber semiautomatic pistol, which law enforcement recovered.

The defendant was arraigned on state charges the next day in Kings County Criminal Court, which were ultimately dismissed in favor of the instant prosecution. The defendant was indicted in federal court for the same conduct on July 21, 2022. PSR ¶¶ 6, 35; see ECF No. 1. The indictment charged the defendant with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One), possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Three). See ECF No. 1.

B. Defendant's Guilty Plea

On March 21, 2023, the defendant pled guilty before Your Honor, pursuant to a plea agreement, to Count One of the Indictment, in violation of 18 U.S.C. § 1951(a). See PSR ¶ 1.

C. <u>Defendant's Criminal History</u>

The defendant's criminal history exhibits a pattern of failure to comply with the law, despite multiple opportunities for rehabilitation.

On November 15, 2008, the defendant was arrested for burglary in the first degree. He was adjudicated a youthful offender and sentenced in 2010 to one to three years' custody and released from custody in 2012. <u>Id.</u> ¶ 22.

On May 7, 2014, the defendant was arrested for attempted criminal contempt after he violated an order of protection when he engaged in a physical and verbal altercation with his then-girlfriend. When law enforcement arrived at the scene, the defendant resisted arrest by attempting to flee down the stairs and refusing to be handcuffed. The defendant was sentenced to 90 days' custody. <u>Id.</u> ¶ 23.

On May 1, 2015, the defendant was arrested for grand larceny after he stole a cell phone. He was sentenced to one year in custody. <u>Id.</u> ¶ 24.

On January 27, 2017, the defendant was arrested for attempted criminal possession of a weapon after, during a search of the defendant's residence, the defendant threw a pillow out of his window that contained a loaded 9mm gun and detached magazine with ammunition. The defendant was sentenced to 18 months to three years' custody and released from custody in 2019. <u>Id.</u> ¶ 25.

While on parole for this conviction, the defendant was arrested on three separate occasions: on September 7, 2019 for operating a motorbike on a public sidewalk at an unreasonable speed with pedestrians present (in which he was also found with counterfeit currency); January 30, 2020 in which a knife, brass knuckles and a kubaton were recovered from the defendant during a traffic stop; and on June 25, 2020 for robbery in the third degree. <u>Id.</u> ¶¶ 25, 32-35. The defendant was declared delinquent pending court action for the first case; the second case was dismissed; and the status of the third case is unknown. <u>Id.</u>

On August 24, 2020, the defendant was arrested for petit larceny after he purchased a handbag at Bergdorf Goodman by using $2,300 in counterfeit $100 bills. He was sentenced to time served. <u>Id.</u> ¶ 26.

D. <u>Defendant's Conduct While on Pretrial Release</u>

The defendant has failed to comply with his court-ordered conditions of release by completely ignoring the terms of his home detention and by engaging in repeated incidents of domestic violence. Notably, the defendant absconded from Pretrial Services and this Court after he failed to appear at a second bail revocation hearing on June 13, 2023.

The defendant was arraigned on September 15, 2022 at which time a temporary order of detention was issued. At a detention hearing on September 16, 2022, the Honorable Roanne L. Mann released the defendant to home detention on a $100,000 bond with three suretors. <u>See</u> ECF Nos. 8, 11. The bond was modified on November 3, 2022 to permit the defendant to seek employment and engage in a regular work schedule as approved by Pretrial

3

Services. ECF No. 13. The defendant was briefly employed as a UPS worker in October 2022 for two months but ceased all employment after December 2022. PSR ¶¶ 54-55.

Within two months of the Court modifying the defendant's bond to permit him to seek employment, the defendant began violating the terms of his pretrial release by leaving his residence without permission on more than six occasions between November 2022 and January 2023 and by testing positive for the presence of marijuana and amphetamines. Id. ¶ 3. On January 5, 2023, the defendant was at a restaurant in Brooklyn subsequently raided by law enforcement for the operation of an illegal gambling establishment. The defendant was only given a summons for having an open container.[1] Id.

After a bond revocation hearing on January 31, 2023, the Court modified the defendant's conditions to allow him to leave his residence for a one-hour period to run errands. Id. Despite this strict condition, the defendant continued to disregard his conditions of release. Between April 12, 2023 and May 10, 2023, the defendant left his residence on 18 separate occasions without approval and outside of the one-hour period approved by the Court. Id. ¶ 4.

On May 7, 2023, the defendant was arrested for choking and hitting his girlfriend in the face. Id. His girlfriend has an active order of protection against the defendant that also extends to her 14-month-old child. Id. ¶ 30. The defendant was charged with criminal obstruction of breathing, acting in a manner to injure a child, assault, menacing and harassment. Id. He was released on bond on the same day. On May 15, 2023, Pretrial Services informed the Court that the defendant absconded from supervision.[2] Id. ¶ 4.

The Court held a bond revocation hearing on June 13, 2023 at which the defendant did not appear. The Court then adjourned the hearing to the afternoon, but the defendant still did not appear, and the Court issued a bench warrant for his arrest. Id.

The defendant was not located until he was arrested on June 16, 2023 in another domestic violence incident against the same girlfriend. Id. The girlfriend had returned home to find the defendant in her bed, in violation of her active order of protection against him. Id. ¶ 31. The defendant was arrested for criminal contempt and set to be released pending trial but remained in custody due to the federal bench warrant. The defendant was transferred to federal custody on July 28, 2023 at which time he was detained by the Honorable James R. Cho. Id.

The May and June 2023 charges for the defendant's domestic violence arrests were subsequently dismissed due to insufficient evidence.

---

[1] This conduct is also detailed in memoranda submitted by Pretrial Services on November 14, 2022 and January 31, 2023.

[2] The April and May conduct is also detailed in memoranda submitted by Pretrial Services on May 10, 2023 and May 15, 2023.

4

II.    Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [U.S. Sentencing Guidelines ("Guidelines" or "USSG")] range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation.  See 18 U.S.C. § 3553(a)(2)(D).  Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence.  The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III.   Guidelines Calculation

The government agrees with the calculation of the defendant's offense level in the PSR as set forth below:

| | |
|---|---:|
| Base Offense Level (U.S.S.G § 2B3.1.(a)) | 20 |
| Plus: Brandished a Firearm (U.S.S.G. § 2B3.1(b)(2)(C)) | +5 |
| Less: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| Total: | 22 |

PSR ¶¶ 10-20.

The total offense level is 22, which, based on a Criminal History Category of IV, carries an advisory Guidelines range of 63 to 78 months' imprisonment.  Id. ¶ 61.

5

IV. <u>A Sentence Within the Guidelines Range of 63 to 78 Months' Imprisonment is Appropriate</u>

The government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. In determining a sentence, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). As relevant here, those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; deterrence; and protection of the public from further crimes of the defendant. <u>Id.</u> Each of these factors weighs in favor of a sentence between 63 to 78 months' incarceration.

The defendant is a recidivist who has been arrested and convicted of multiple crimes through the entirety of his adult life. His criminal history includes prior felony and misdemeanor convictions involving burglary, theft, and firearms. PSR ¶¶ 22, 24-26. His instant offense of armed robbery only continues this pattern.

The defendant's criminal history also shows a dangerous proclivity for domestic violence. He has violated active orders of protection filed against him by former and current girlfriends, and he has been arrested and convicted of attacking those girlfriends, including his 2014 conviction, <u>id.</u> ¶ 23, and his 2023 charges, <u>id.</u> ¶¶ 30-31. While on pretrial release for the instant offense, he violated an order of protection twice for beating his girlfriend and later sneaking into her home and bed. <u>Id.</u> ¶¶ 30-31. These are extremely serious offenses for which the defendant appears to show no remorse or rehabilitation. In fact, the opposite.

The defendant's request for time-served—less than 10 months by the time of sentencing—demonstrates his continued refusal to acknowledge responsibility for his conduct, and it is completely unjustified. He argues that a time-served sentence is appropriate due to his difficult upbringing, the consequences of a felony conviction, and conditions at MDC. First, the defendant describes growing up "in a loving home and his childhood was devoid of any forms of abuse" and "under middle-income circumstances." <u>Id.</u> ¶ 39. Despite that healthy environment, the defendant chose to commit a burglary at the age of 14, <u>id.</u> ¶¶ 22, 39, and thereafter blamed others for the decisions he continued to make, <u>see, e.g.</u>, Def. Mem. at 2. The consequences of the defendant's decisions do not excuse his violent reaction to an innocent store clerk asking for lawful payment of a food item. Second, the defendant is no stranger to a felony conviction, having already been convicted of three felonies and two misdemeanors, and the consequences of his decision to partake in the instant crime do not excuse him from the Court's need to achieve the goals of sentencing. Third, courts often impose Guidelines sentences even while crediting arguments about the MDC, in light of countervailing factors under Section 3553(a). <u>See, e.g.</u>, <u>United States v. Hilliard</u>, No. 22-CR-82 (CM), 2024 WL 1193606, at *2 (S.D.N.Y. Mar. 20, 2024); <u>United States v. Stewart</u>, No. 21-CR-42 (WFK), 2023 WL 2599668, at *7 (E.D.N.Y. Mar. 22, 2023). The same should hold true here—on balance, the defendant's time at the MDC does not weigh heavily enough against the nature of his offense and the need for deterrence to warrant a sentence below the Guidelines range.

Indeed, the nature of the instant offense warrants a significant sentence. When the store clerk confronted the defendant about stealing a snack, rather than pay for the food item or leave without further confrontation, the defendant made the conscious decision to pull out a gun. He reacted violently by aiming and racking that gun at the store clerk, indicating that he was ready to fire. The defendant took these steps to threaten the store clerk and in the presence of other customers who could have been injured by his violent conduct—the video surveillance shows a customer standing right next to the defendant. The potential for violence created by the defendant's conduct cannot be understated.

Shorter sentences imposed in past cases have failed to deter the defendant from continuing to violate the law. His history of parole violations and pretrial release revocations demonstrates that the defendant has consistently reoffended, sometimes within months of his release to parole status. The defendant has shown a disregard for court orders and for the safety of his community. A Guidelines sentence is needed to protect the public from further crimes of the defendant, and his disproportionate and irrational violent reactions to others' law-abiding behavior.

V.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range, that is, between 63 to 78 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Miranda Gonzalez
        Miranda Gonzalez
        Assistant U.S. Attorney
        (718) 254-6183

cc:     Clerk of Court (MKB) (By ECF)
        Karume James, Esq. (By ECF)
        Senior U.S. Probation Officer Jennifer Baumann (By Email)
        Supervisory U.S. Probation Officer Jennifer Fisher (By Email)